Case No. 17-7012, et al. Edward D. Peterson, personal representative of the estate of James C. Hipple, deceased, et al. v. Islamic Republic of Iran, et al. Co-Collection of Attorneys, PLC, et al., appellant. Mr. Miller, for the appellant, Co-Collector of Attorneys, PLC. Mr. Storch, for the appellant, James Glenn. Mr. Vail, for the appellate. Good morning, Your Honors. Good morning. May it please the Court, Eric Miller on behalf of the lien holder appellants, David J. Cooke and Cooke Collection of Attorneys. Based on the record, it's undisputed that Mr. Cooke was the source of $1.89 billion of funds that was recovered for the plaintiffs on their judgment. Paragraph 9 of the Cooke-Retainer Agreement provides that any funds recovered are to be remitted into a joint escrow account and Cooke is to be paid first. Paragraph 9 makes clear that Cooke's fee is to be paid from the judgment recovered. There is no language in the Cooke-Retainer Agreement that suggests that Cooke is to be paid out of the litigation attorney's fee. The sole issue presented is whether plaintiffs are parties or are bound by the contract. Under basic principles of contract interpretation, a writing must be interpreted as a whole, giving reasonable, lawful, effective meaning to all of its terms in light of the circumstances surrounding the parties at the time the contract was made. This is an enforcement contract that was entered into after the judgment to bring about a recovery, which specifies Cooke is to be paid first. The nature of the contract and the mechanics of payment of Cooke's fee strongly suggests that the plaintiffs were intended to be parties. The plaintiffs are specifically identified as parties in the arbitration provision because they are paying his fee in the recovery. What is the status of the arbitration? Excuse me. Is that going on now, the arbitration? I'm sorry? The arbitration, what is the status of the... The status of the arbitration... Between your client and lead counsel. We have completed the factual, the evidentiary portion of the arbitration, and it's in briefing now. Well, so what's the relationship between that and this case? Why should the courts, you're asking the court to exercise equitable authority to recognize a lien. Why should they do that in your case since the arbitration proceedings are underway and halfway through? Well, because the money is in the QSF trust, and in order to affect, to have an effective remedy, we need our lien. And we're entitled to the lien under our contract with the plaintiffs and the attorneys. I'm not sure I follow that because if the money is in a trust and the purpose of to make sure that the plaintiffs, the party that the counsel represented doesn't abscond with the money, the money presumably will be held until the lawyer's fee is determined or not. No, that's not true. And we are, we have been, the trust is being administered by the New York District Court, and that money could leave the trust. We have been asking the New York Court on an attorney lien in the New York Court under Section 475 of the New York Judiciary Law, but that court hasn't agreed that we have the attorney lien there. But if you're right about your- Are you seeking an attorney lien against the, so you're basically pressing the same claim there that you're pressing here? This is a different lien here. This is a different lien right. My client, the argument in the New York Court was that my client was never, never appeared pro hoc vici. In this court, my client did appear pro hoc vici and is entitled to lien rights in this, provided that the plaintiffs agreed to give him a lien. And what we're showing here is that the plaintiffs have agreed to give him a lien, and that he is entitled to his lien right here. But if we, if for us to decide, I'm confused by what you just said, whether or not the plaintiffs have agreed to a lien, we have to look to their agreement with lead counsel, don't we? That's where we look to see, and that account, that agreement says very clearly several times that the plaintiffs are not, although they've agreed to lead counsel hiring your client, they've made, that makes very clear in several places that the plaintiffs are not responsible for any of the expenses in connection with that retainer. We believe that that clause can also be interpreted as simply a cost plus fee, or fee plus cost agreement, where it says that. Paragraph three, client shall have no liability for any expenses in connection with the preparation of this lawsuit. All such expenses shall be the sole obligation of attorneys. I mean, the attorneys will under no circumstances represent to any vendor, supplier of services, that's your client, or contractor, that they are incurring expenses on behalf of the plaintiffs. It says it three times. I believe it can be interpreted as simply assuring the plaintiffs that under no circumstances, unless there's a recovery, will costs be paid. It doesn't say that. Now, the other aspect to this. Wait, wait, it doesn't say that. It doesn't say that they are incurring under no circumstances, unless there's a recovery.  It's not in the agreement. The agreement says what it says. The agreement, I believe, can be interpreted to say just what I've said, which is that no costs will be incurred to the plaintiffs, and plaintiffs will not be responsible unless there's a recovery, at which point costs can be paid to whether it's lobbyists or all the other people that were responsible for this judgment. So those costs can be paid. I think the other critical point here is that the underlying agreement was not shown to my client. So there's another analysis here that would be actual authority. The other analysis is was there apparent authority and was there ratification and estoppel. We have a declaration that was submitted to the district court showing the apparent authority and estoppel, and those would be another basis upon which the plaintiffs would be bound. Thank you. Am I into my... I see I have a few more minutes. You can go ahead. You didn't say anything. I thought you were done. I wonder why your client needs a lien in this case. I'm just having a little trouble. Is there any question that litigation attorneys are going to be insolvent or will be not reachable out of jurisdiction or will spend the money? I mean, we don't see cases between lawyer and lawyer. Well, it's the whole purpose of a lien right, Your Honor. The whole purpose of that is that, no, I don't know that they are insolvent, but the whole purpose of a lien is to have a property right claim against that, an equitable claim against that until we have our determination. But why would one need that in the absence? I mean, I understand that it's a general matter why the law so provides, but I'm trying to understand in this case, other than leverage, what protection would you need from any such lien? Well, because without the lien, the money gets dispersed to the various attorneys, and there are many of them out there that are going to get this money, and then we have a collection proceeding going on after that. The lien protects that. The lien stops that whole another round of a collection proceeding after these lawyers. Yes, they may come forward and pay it, but— The lien doesn't stop it. Presumably, the lien would be in place until— I mean, you still have to make calculations in order then to release the funds that are subject to the lien. That's right. So in either event, you have to have the final litigation that establishes the details of the amount that each service provider is entitled to, no? That's right. In effect, what it will do is stop distribution out of the trust until our clients have their judgment on that, and then we can go to the trust with that judgment and recover it. That's the simple answer to it. And otherwise, the money will get distributed out of the trust, and then we've got a collection of proceedings against a handful of lawyers to try to recover that money. Just curious, what is the status of the distribution from the trust? Excuse me? What is the status of the trust at this point? The trust is on the verge of distributing the money to the attorneys. Most of the money has been distributed to the plaintiffs, but the attorneys' money has been held up on that. And so we're talking about a period of three to six months. Why has the money been held up? Excuse me? You said the money has been held up? Well, the money has not been distributed. There have been a number of different claims against that money in the USF Trust. One of them is our claim, but there are many others, and you'll see there's another claim here from Mr. Klen. So that money has been held up pending that. But we're talking about a period of about six months until this is resolved. And that's the requested lien right. That's what we have a right to. Okay. Anything else? I don't think so. Okay. Thank you. I'm probably over my time. Yeah, you are. Thank you. So we'll hear from Mr. Bales now in response to your argument, and then we'll move on to Klen. Okay? Good morning. May it please the Court, I'm John Vale for the plaintiffs in this case. And there are two elements to the equitable lien that's being sought here. One is an agreement with the client. Two is an agreement with the client that the funds paid to an attorney be paid from the corpus recovered. Mr. Vale, what interest do your clients have in resisting the lien? Well, they have, as any person does, they have an interest in not having their funds sequestered for a dispute with which they have nothing to do. We've heard that they're actually getting paid or have been paid, that those monies aren't being held up. There are some monies that have been paid. There are some monies that have been retained. There are monies retained to pay claims that lawyers have against the clients. The participants here have all participated in a process before the district court in New York. Judge Forrest appointed a special master. The special master has made a report to the district court. The time for objections to the special master's report has passed. And now we're awaiting an order from Judge Forrest about her resolution of, in part, the same disputes, analogous disputes that are here. I don't want to say the same because here the liens are claimed as a matter of D.C. law. Right. I'm just curious why we're here, why this isn't something that could be dealt with by an agreement among all the claimants on the attorney's fee portion to keep it in trust until the allocation is worked out or to keep enough of it in trust, the disputed part in trust, until the allocation is worked out. I understand you have many people who are involved in a complex process of litigation, and I'm just curious why you would be fighting this on behalf of plaintiffs given the posture of the case. Because the plaintiffs feel duties to the lawyers who have represented them for the past 15 years. This is a unique situation, Your Honor. The plaintiffs here are mostly Marines, and the Semper Fi, the brotherhood idea of the Marines shows through in all the actions they've taken. They feel these duties to people who have been with them from the long beginning of this case and the unlikelihood of recovering anything from the Islamic Republic of Iran. And they want to do that. They want to pay these people. The claims involved here are huge. I am not certain of the present magnitude of Mr. Glenn's claim, but at one point it ranged to $60 million. Mr. Cook's claim at one point was $210 million. So the sums involved are huge. They interfere with distribution to a small army of lawyers who did basically damages proofs in these cases. They took those cases on contingency, and it's almost two years since the Supreme Court has said that they should be paid, that the plaintiffs should be paid, and these people are still waiting for their money, and the plaintiffs want to pay them. I thought you said that most of the money had been distributed to the plaintiffs. Much of the money has... That's what you said when I asked you the question. Well, that was, I believe, Mr. Miller. Much of the money has been distributed, but some of the money is still being retained by Judge Sporkin, who is the trustee of the QSF. And is this litigation the holdup, or there are other... This litigation, I believe... The New York litigation also. I would represent to the court that this litigation is part of the holdup, yes. And it seems like that's within your power to dispel. I mean, the clients should be able to have their money. Your Honor, in the suggestion of mootness that we filed, we have filed a transcript from the arbitration in which the litigation attorneys have agreed to assume responsibility for anything that is awarded to Mr. Cook. The litigation attorneys are trying to insulate the plaintiffs. In other words, it won't come out of plaintiffs' pocket, is it? That's correct. But Mr. Cook has never asserted that it would. But, yes, he has asserted because of the nature of this lien. You noted that you don't see many cases between attorneys. That's because an equitable charging lien in D.C. does not exist between attorneys. He has no lien. Go ahead. Really? All right. Do you know what percentage of the total recovery goes to the lawyers? Do we know that? Has that been resolved? Yeah. That number is resolved, right? That was clear that it was, yes. And Cook and Glenn have agreed that whatever they or the lawyers have, your client, Lee Counsel has agreed that whatever these two lawyers get comes out of their pockets, not out of their recovery, out of their fee, not the plaintiff's, right? Well, I can't say that there's an agreement with Mr. Glenn. They've announced that. Yeah, they haven't announced that. They have with Mr. Cook. Then given that, I don't understand then why this case is delaying the distribution of all of the funds from the fund to the plaintiffs. I just don't see why that's the case. Nor do I, Your Honor. But that would have to be a question for Judge Sporkin and his counsel. It's a question we have posed to Judge Sporkin and his counsel. Because earlier, as I understood it, one of the points you were making was that uncertainty about the amount that's owed to, say, Cook, is a reason that the plaintiffs might resist this kind of proceeding because they don't want to have their recovery subject to ambiguity about what share of that recovery should be taken aside to give to Cook. The plaintiff's estimation of liability to Mr. Cook might be two orders of magnitude less than the amount of the lien that Mr. Cook claims. So it's the amount of the lien. Because if everybody agrees that whatever Cook recovers comes out of the lead attorney's share. Which has been agreed. Then it shouldn't matter to the plaintiffs because then they know what's going to be locked off for the lead counsel and then all we're talking about is how that amount is allocated as amongst the various counsel that have a stake in that pot. But there's still the issue of timing, which is a concern to the plaintiffs. And this is their money. They get to do what they would like to do with it. They're the clients. Right. So in D.C., an attorney has a charging lien where the attorney is representing a client and the client and the attorney understand that the attorney is going to be paid out of the case's proceeds. Let me take issue with that. It's where the attorney is retained by the client. Right. Retained by the client or surely, I mean, an agent of the client. If you're retained by a client, you're representing the client. Well, not for purposes of the equitable lien. Let me analogize. Well, that's the question. Let me analogize to a law firm. Under the theory that Mr. Miller and Mr. Storch would advance, each associate in a law firm. Not so. It's a legal entity. So if you have a lawyer who's representing a plaintiff, litigation attorneys, and they seek to bring on and they are empowered by their contract with the plaintiffs to bring on other counsel, my question is aren't those other counsel counsel for the plaintiffs? They're not, for example, counsel doing, you know, contract work for the litigation attorneys writing their contracts with the plaintiffs. They're doing legal work for the plaintiffs. That's Democratic Central Committee answers that question. Not exactly, because in Democratic Central Committee, the court said at the outset that the lien that the subsidiary attorney was seeking was a lien against the primary attorney. And they said, therefore, this issue doesn't even arise. And then there's dictum about charging liens more generally. But that's a very different situation. That's more like a lawyer that the primary lawyer hires to write up its contracts, as distinct from here where counsel peers pro hoc for litigation counsel. Counsel presumably has attorney-client privilege because they're lawyers for the client. And so there is an attorney-client relationship. And, of course, it's mediated through the supervision of litigation counsel. But the underlying question of who are they representing, it seems to me, is at least arguably that they're representing the plaintiffs. It's very clear that the plaintiffs authorized the lead counsel to employ other attorneys, in part, to represent them. It is also clear that they said you cannot do that at our expense. It's clear in the contract. And it's also, as a matter of law, Fay and Perlis had a preexisting legal duty to the plaintiffs to do the collection work on their behalf for the contingent fee that they were supposed to receive. Right. And that's why all counsel here, nobody disputes that the percentage of the percentage that Cook is claiming comes out of Fay and Perlis's money. So it's coming out of the award as a tranche of Fay and Perlis's proportion. So it is coming out of the award. So if you're a lawyer thinking, am I going to go do this work under the umbrella of lead litigation attorneys, and you're thinking, do I need to write some special security in, you think, no, I don't, because my money is coming from what we recover. That will be on the table. That will be there. And even if Fay and Perlis goes bankrupt, my money is coming out of the recovery as a percentage that has been allocated to me by Fay and Perlis. No, because the plaintiffs have not authorized that distribution of their money. No, but isn't that the Glen? They could have. Isn't that the Glen? It's Glen who's claiming a lien against lead counsel's portion of the recovery, of the fee, right? Yes. Cook is arguing here, as I understand it, that there's a, that he has a contractual, an equitable contractual right to a percentage of what the plaintiffs, right? I think, I would think that, I think you can, that Mr. Cook is also now arguing. Now he is, yes. That he's entitled to that tranche. Yes, now he is. But, again, this is the plaintiff's money. They control it. They didn't authorize it. And nothing in D.C. law recognizes that kind of lien. The lien simply does not exist. Mr. Mills, you're way over. Yes. You can have your time after the next. Mr. Storch. Mr. Storch argues, okay? Thank you. So did counsel have any time left? No, you can take one minute, Mr. Miller.  Miller. Oh, right, right, right. Yeah. Rebuttal. Rebuttal by Mr. Miller. One minute. If you want. Well, I'll be very quick. Right. That's why I said a minute. Let me just clear something up. There has been an understanding between all of the claimants as to the QSF trust that nobody is making a claim as to plaintiff's proceeds. And they can be distributed. There's no delay in that. There are issues within the trust, but it has nothing to do with any of our claims. So it is questionable as to whether counsel is here really on behalf of the lawyers or on behalf of the plaintiffs, because they don't really have an issue here. But you were seeking a charging lien under D.C. law against that portion of the plaintiff's recovery that would cover your fee claim. That's right. You're seeking a lien against the plaintiffs, not against Fay and Perlis. I mean, I know functionally those are sort of collapsing given the posture, but. Yeah, that's our view. The charging lien can be limited, and we're perfectly agreeable to that, limiting it to not the plaintiff's proceeds directly, but only that share of the proceeds that go to the litigation attorneys. So nobody wants to hold up money for the plaintiffs. And I think everybody, all counsel are in agreement on that. So that would be the limitation. That's how we would understand it. Since we've agreed that they will be responsible for the award, then we can simply limit that lien to their share of the fees to make sure that there's no interference with any remaining distributions to the plaintiff. But my understanding is it's something in the range of 95% that's been distributed to the plaintiffs. So there really is no issue for the plaintiffs here today. They don't have a dog in this fight. All right. Okay. So now we'll hear from Mr. Storch, right?  Good morning, Your Honors. May it please the Court, Stephen Storch for Appellant Jay Glenn. First, I think it's clear, but I just want to reiterate, Mr. Glenn, who is a war veteran, has been very explicit below that he does not want a penny from the plaintiffs. His claim and his claim for a lien is against the portion that is owed to Fay and Perlis. The way the QSF has been set up is the trustee is distributing money to the plaintiffs on their claims and then is making separate distributions to the attorneys on their claims. And has that process begun? The process has begun. What has slowed it up are a number of things, including some of the plaintiffs did not have the correct information as to their whereabouts. They were trying to trace down beneficiaries. No, that wasn't my question. My question was has some of the funds been distributed to the attorneys? Yes, it has. Some of the funds have been distributed to the attorneys. What percentage would you say? I don't know the answer to that. We have been trying to get that information. We don't have that. Mr. Glenn's claim against Is that why you want a lien? Correct. And Mr. Glenn's current claim against these funds is $11,267,000 and change based on the pro rata distribution that is being distributed out from the fund. So we are able to calculate Mr. Glenn's fee. It does not in any way impair the money that would go to the plaintiffs. And just out of curiosity, why does the lead counsel think Mr. Glenn is not entitled to that? Well, Mr. Glenn was a damaged attorney. Their answer is you didn't do the work well. I see. As we have in the record below, Mr. Glenn did 41 depositions on the damages case. He met with clients. We've laid out in the record what he did. And the Fey and Perlis answer is we don't think he did the job. Have those calculations been used to compensate those plaintiffs? The evidence that Mr. Glenn presented and the proceedings in which he represented those plaintiffs on damages issues, has that evidence and those findings been used to distribute to those plaintiffs? I don't believe so. It's been presented to the trustee overseeing the QSF trust. I don't know. The way the distributions are made is somewhat opaque to us. We would deny intervention in that proceeding so we don't get all the information as to what's going on. Much of it is under seal. But I think the fact that we're not going after the plaintiff's money is extremely important here because I don't even think we need to discuss this in terms of an attorney charging lien. I think this is really a traditional equitable lien. But your problem is DCC, right? It's this court's opinion in DCC. Yes, and I don't think it's a problem because DCC is different. Why is DCC different? Because there, the attorney who retained the other attorney said, I'm going to pay you out of the legal fees I get in the fair. Well, that's what the retainer between the lead counsel and the plaintiff says. Right. But in DCC, the attorney filed his lien not against the fund of the attorney's fees in one case. He actually filed his lien against the fund created in another case. And what they said in DCC, and it really is indictor because ultimately DCC said, hey, we're not empowered to decide the attorney fee issue. But in DCC, they said, yeah, the plaintiff's never agreed that you could take money out of that other fund. The only agreement you're pointing to is an agreement with an attorney to take it out of a different fund. So you're asking us to make two jumps here. One, that the attorney could bind the clients. And two, that somehow we should shift the agreement now to a different fund. The district court relied on another case, the Hogan case out of the Ninth Circuit. And that's a similar issue. There, there was an agreement between the attorney that the attorney was going to pay the other attorney a co-counsel fee. That attorney, who was supposed to pay the fee, went bankrupt. He was also disbarred. The attorney who claimed he was owed money went into the bankruptcy court and his claim was discharged. He was denied it because of the bankruptcy. He then went and filed the lien against the client's money saying, hey, I should be paid out of your money. But the district court in Hogan in the Ninth Circuit said, wait a minute, you can't backdoor your claim now. Your claim is against the attorney. Now you're trying to generate a claim against the clients who you don't have a direct claim against. So you're drawing a distinction between a lien that would be asserted against the ultimate clients, the plaintiffs, and a lien that would be asserted against the attorneys. And there's the attorney charging lien, which seems like, just as a general matter, goes against the clients. And then there's the equitable lien, as you described it, which goes against the attorneys. Correct. In the proceedings below, I thought the proceedings below were really about an attorney charging lien. We also raised the equitable lien argument below. Maybe we didn't emphasize it enough, to be honest. But we did raise that there was an equitable lien, and we emphasized that we're not going against the client's money, that this dispute is between us and the attorneys. And, in fact, I don't think there was a dispute down below. Occasionally the thing and pearl is say, hey, you're trying to stop the distribution. But even in their own brief, I think their brief on page 3 in this case, acknowledges, yeah, the money is supposed to come out of our share. Is there any indication that the district court understood that you were asserting an equitable lien against some separate tranche of money that went to the attorneys as opposed to the money that was going to the plaintiffs? Because I understood the court to assume that you were asserting an attorney charging lien. They did. They did. But we did have a two-pronged assertion there, the charging lien and the equitable lien. If I may, on the charging lien, we also pointed out that we actually have the agreement of the clients. Mr. Glenn put in an affidavit below that said when I signed these 33 clients up, I told them that my percentage would be one-third of the Fay and Perlis fee and that I would be paid out of that fee. And he had we submitted, I think it was 33 contracts, that had the client's signature on it and Mr. Glenn's signature on it. Now, it didn't say about the one-third of the Fay and Perlis. It just said that Fay and Perlis were being retained. But as Judge Lamberth below acknowledged, an oral agreement is sufficient for purposes of an attorney charging lien. Peter, not when the retainer between the lawyer and the client is clear, clearly to the contract. Well, it's not exactly because as we pointed out, the contract said that we're going to retain other attorneys.  Okay. So it's not contrary to come in and say. But that the plaintiffs would not be responsible for any of the expenses of those attorneys. But they're not. The plaintiffs aren't. We're not going after the plaintiffs. We're not asking the plaintiffs for a dime. We are saying. That's why the problem you have is the DCC case. We're in DCC land here, right? No, because DCC, they were actually going after the client's money. In DCC, the agreement was for a specific fund of attorney's fees that the attorney was supposed to get. For whatever reason, maybe that fund was too small or didn't materialize, then the attorney said, oh, you know what? The clients have this money in this other bank trust account, and we want that. And the Court said, you can't get that. At best, your agreement says you're entitled to the fees that are generated from that other case. So that's why I think DCC really is distinguishable. And I think Alam, subsequent to the DCC case, articulated that, you know, don't treat these attorney liens as different than an equitable lien. Because what you have here is a situation where, you know, the money goes to Fay and Perlis, and, you know, to Judge Pillard's question, they're already fighting between themselves. There are all sorts of competing claims. The purpose of the lien is to protect you from having to go and do all those fights. That's it. Okay. Thank you. Okay. Thank you. Let me begin by addressing a fundamental legal point here. Mr. Storch is distinguishing between a charging lien and an equitable lien. They are not different things. DC has no statutory attorney lien. It recognizes at equity one lien, one lien only, an equitable charging lien that has two elements to satisfy. An agreement with the client to be retained and an agreement with the client that the attorney be paid from a corpus recovered in the action. So I don't understand that. That means that there could never be an equitable lien against attorneys for fees that they owe to other attorneys? Not in DC. DC does not recognize that. There could be. These people, both of these people. Maybe there's no case. Really, that just seems like a natural equitable instrument. Why would it be the case under law that you could attach a lien against clients but you couldn't attach a lien against attorneys? Because equity was concerned with the client using excess power by having command over the corpus against the lawyer. That's not so between lawyers. And the lawyers between each other are both sophisticated players. DC will recognize a contractual lien. Judge Pillard noted that. That these people could have bargained for a lien. They didn't. Isn't the same or is the same equitable concern present among lawyers where there's litigation, counsel, as you put it, having excess power over the corpus against the lawyers who had a smaller role? One reason there is not is because of the ethical duty that lawyers have to sequester contested funds that are in their possession. So equity does not need to come to the rescue in that way. That's why I'm a little puzzled why you are resisting this. And also why there's not counsel on this fee matter separate from litigation counsel yourselves. You are counsel for the plaintiffs in the underlying action. That's correct. Now there's a fee dispute between various attorneys. And it may or may not be in the plaintiff's interest to take a position that is in Fay and Perlis's interest. Why no separate counsel? We are clear we are representing the plaintiffs and their interests. A fundamental rule of law is that the owner of property gets to control their own property. The plaintiffs here are resisting a foreigner, someone with whom they have no contractual relationship, exercising control over their funds. The QSF was created for the benefit of the plaintiffs. The trustee is a trustee for the plaintiffs. He's not a trustee for the lawyers. Is it litigation counsel's position that Mr. Glenn and Mr. Cook are entitled to no payment? Litigation counsel have taken the position, have announced the position in the arbitration that indeed so, and that they will be responsible for it. That they're entitled to no payment? And litigation counsel... Did you say that they've taken the position that they're entitled to no payment? Well, they're resisting their payments in the arbitration. But if an award is made in the arbitration, litigation counsel will pay it. And I believe the same will be true. Mr. Glenn's claim is proceeding both... He's got his position before the district court in New York. He's got a claim pending before the district court in D.C. over the matters that underlie this request for a lien. But he's not... He's not in the arbitration proceedings, right? No, he's in court. But you said that the statement lead counsel made about being responsible was made in the arbitration proceedings with Mr. Cook. Yes. So that I can represent that, you know, counsel will take the position that they are responsible for an award to Mr. Glenn in the same way. The lawyers here are seeking an extraordinary status under equity to which they clearly are not entitled under the law of the District of Columbia. And that's the only law applicable. If we agree with you that there's no lien, then what happens next in Glenn's case? I understand the other cases in arbitration. Does Glenn's claim get litigated in the district court? Glenn's claim will continue in the district court. Is that being litigated now? The issue, yes. Is that being litigated now? Is that going on in the district court now? Yes, there's a Rule 26F conference on Friday in that case. I see. So here is simply about whether they are entitled to an extraordinary position of a protected creditor for which they could have bargained and did not. Have you received any payment of fees so far? Have I? No. Has the litigation counsel? Yes. And your retainer has an express lien in it, and you didn't assert that at any point? No. All right. Okay. Okay, thank you. Did Mr. Storch? He had no time, right? Okay, one minute. Your Honors, the case is pending now between Judge Lamberth, Mr. Glenn has a claim for failure of Mr. Fay and Mr. Perlis to pay the fees. After we had fully briefed this appeal, Judge Lamberth denied the motion to dismiss the claim against Fay and Perlis, and that case is now pending. Its significance for this appeal is that in the ELAM court, as we cited, the court said, stop making this artificial distinction between a lien and a cause of action. If you have a cause of action for a fund, then there's no reason why there shouldn't be a lien. Mr. Fay and Mr. Perlis are actually asking to put themselves in an extraordinary position, which is have the plaintiffs pay us the money that Mr. Glenn is claiming, and we'll take that money, and we'll say we don't think you did a good job, and we'll hold on to it and litigate with them. That's an extraordinary position. The liens come into operation not by express agreement, by operation of law. If Fay and Perlis were insolvent, I could see that you would need a lien. What is the practical need for a lien here? The practical need is, first, the law doesn't require it, but, second, there are competing claims. Fay and Perlis have litigated claims against each other for breaches of fiduciary duty, for having dissipated money, not done things properly. There are other attorneys that are out there that have actually put in affidavits claiming about difficulty in having gotten collections. It's just not a risk that Mr. Glenn should have to bear. It's simple. This is not their money. It's a portion of it. They could put it aside in the QSF Trust, not impact the plaintiffs. We could do our litigation in front of Judge Lamberth. We would be happy to do it on an expedited track. And then, if we're successful, and we believe we will be, but there will be money there for us to collect. It wouldn't be the first step and then having to go against Fay and Perlis, listening to them dispute, well, who owes what, you owe that much, I owe that much, oh, I had to pay so-and-so. That then sets Mr. Glenn on years of litigation, which frankly is a tactic in defending against his claims. So that's why we ask for equitable help in this regard. Okay. Thank you. Thank you all.
judges: Tatel, Srinivasan, Pillard